AL:JMS
F#. 2017R00941

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION
FOR A SEARCH WARRANT FOR:

THE PERSON KNOWN AND
DESCRIBED AS FRANK SMITH,
DATE OF BIRTH AUGUST 21,
1984

THE PERSON KNOWN AND
DESCRIBED AS NABIU
MANSARAY, DATE OF BIRTH
NOVEMBER 28, 1983

- - - - - - - - - - - - - - - - -X

AFFIDAVIT IN SUPPORT
OF APPLICATION FOR A
SEARCH WARRANT

(Fed. R. Crim. P. 41)

17 M 956

EASTERN DISTRICT OF NEW YORK, SS:

    MARGARET GIRARD, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

    Upon information and belief, there is probable cause to believe that evidence of violations of Title 18, United States Code, Sections 1959(a)(1) and 1961(1) will be obtained by taking, and preserving as evidence, buccal swab samples or blood samples of FRANK SMITH and NABIU MANSARAY.[1]

---

[1] Some of the courts that have addressed the issue have found that obtaining DNA via saliva is subject to the protections of the Fourth Amendment. See United States v. Nicolosi, 885 F. Supp. 50, 51-56 (E.D.N.Y. 1995) (Glasser, J.); In re Shabazz, 200 F. Supp. 2d 578, 581-85 (D.S.C. 2002). But see United States v. Owens, 2006 WL 3725547, at *6-17 (W.D.N.Y. Dec. 15, 2006) (finding probable cause not necessary for a saliva sample for DNA from an inmate); In re Vickers, 38 F. Supp. 2d 159, 165-68. (D.N.H. 1998) (permitting saliva sample by grand jury subpoena).

The source for your deponent's information and the grounds for her belief are as follows:[2]

## I. Background

1. I have been a special agent with the FBI for three years, and am currently assigned to the New York Metro Safe Street Gang Task Force, where I investigate gangs, narcotics trafficking, firearms trafficking, fraud and other offenses. The facts set forth in this affidavit come from a review of records of the FBI, New York City Police Department ("NYPD") and other government agencies, including video footage recorded by surveillance cameras and reports of victim interviews, and conversations with other law enforcement officers.

2. I have been involved in an investigation of FRANK SMITH and NABIU MANSARAY in connection with the aforementioned criminal activity.

3. SMITH and MANSARAY are members of "Rival Impact" (or the "Enterprise"), a violent criminal enterprise operating in and around 33rd Street and Mermaid Avenue in the Coney Island area of Brooklyn, New York from at least 2001 through at least 2014, the principle purpose of which was to generate money for its members and associates through various criminal activities, including murder, attempted murder, kidnapping, robbery, assault and other crimes. SMITH, MANSARAY and other members of Rival Impact earned money by trafficking in heroin, crack-cocaine, marijuana, ecstasy,

---

[2] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to search, all of the facts and circumstances relevant to this investigation are not set forth in this affidavit.

2

prescription pills and other drugs in Brooklyn, Maine and Pennsylvania, as well as by engaging in armed robberies. The members of Rival Impact protected these criminal businesses and furthered the Enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder. SMITH and MANSARAY were long-time and loyal member of Rival Impact – they personally engaged in criminal conduct, including narcotics trafficking and murder, on behalf of the Enterprise.

4. In connection with SMITH and MANSARAY's association with the Enterprise, a grand jury in the Eastern District of New York returned a Superseding Indictment charging both defendants with, among other things, conducting and participating in the conduct of the affairs of the Enterprise from approximately 2001 to 2014 through a pattern of racketeering activity, in violation of Sections 1962(c) of Title 18 of the United States Code. See United States v. Smith, et al, 16-CR-346 (S-1), Dkt. Entry No. 34. SMITH and MANSARAY were also indicted for conspiring to murder and actually murdering two individuals, in furtherance of their racketeering Enterprise. Id.

5. As alleged in the indictment, SMITH, MANSARAY and other members of Rival Impact sought to protect the criminal enterprise through intimidation, threats and violence against rival crew members. Consistent with this aim, members of Rival Impact, including the defendants, participated in various acts of violence against rival crew "Thirty-O" members. Indeed, the defendants and other members of Rival Impact specifically conspired to murder members of "Thirty-O," including Terrance Serrano and Rashawn Washington, resulting in fatal and non-fatal shootings of Thirty-O members and innocent bystanders.

6. In the early morning hours of October 4, 2010, the NYPD responded to multiple 911 calls from witnesses and found the bodies of Terrance Serrano and Rashawn Washington in a car located in the vicinity of 30 East 19th Street in Manhattan. As indicated by witness testimony, shortly after leaving a Manhattan nightclub, Serrano and Washington entered their car, which was parked a short distance from the club. As demonstrated by various forms of evidence, and as charged in the above-referenced indictment, including surveillance, cell phone evidence and witness testimony, SMITH and MANSARAY, who had been lying in wait in a nearby vehicle, approached Serrano's and Washington's car, opened fire, and fled from the scene. Serrano and Washington were pronounced dead at the scene. SMITH, MANSARAY and others planned and carried out the murders in retaliation for Serrano and Washington's perceived involvement in the drive-by shooting of Rival Impact member Vincent Carmona in August 2009.

7. Telephone records, historical cell-site data, surveillance video and images, documentary evidence and witness testimony, prove that SMITH and MANSARAY left their locations in Coney Island in the very early morning of October 4, 2010. According to license plate reader data and cell phone evidence, the individuals drove over the Brooklyn Bridge (in MANSARAY's mother's car, a 2001 Lincoln Towncar), and proceeded to the location just north of Union Square. SMITH then received a phone call from an associate inside the club where Serrano and Washington were leaving from; moments later, Serrano and Washington were shot. Cell phone evidence and license plate reader data show that SMITH's phone and the Lincoln Towncar both traveled back across the Brooklyn Bridge, and then phone data places SMITH, MANSARAY and their associate (who was inside the club) back in Coney Island together in the early morning hours.

4

## II. DNA Evidence

8. Subsequent to the murders, on October 6, 2010, MANSARAY's mother's Lincoln Towncar was seized and swabbed for DNA and any hairs. Additionally, the vehicle in which Serrano and Washington were killed was also seized and swabbed and tested. The Crime Scene Unit of the NYPD recovered testable hairs, particles and DNA swabs from the vehicles.

9. As set forth above, SMITH and MANSARAY are both alleged to have driven in the Lincoln Towncar to the scene of the crime, and then retreated from the scene in the same vehicle. In my training and experience, they may have left hairs or DNA from sweat or otherwise in the car, including on its door handles, seatbelts, seats and so forth. Additionally, in their attack on Serrano and Washington, the defendants may have transferred hairs or particles, such as shattered glass, between the two vehicles. Based on the facts outlined above, and information obtained during the course of the investigation, there is a substantial likelihood that the DNA of FRANK SMITH and/or NABIU MANSARAY was collected from the vehicles.

10. The Office of the Chief Medical Examiner ("OCME") for New York City, has advised the government that it requires a DNA sample obtained directly from each defendant (e.g., a buccal swab or blood sample) in order to obtain the DNA necessary to perform a complete analysis of whether FRANK SMITH and/ or NABIU MANSARAY was a contributor to any DNA material found in the cars that were involved in the murders.

11. Based on the above information, there is probable cause to believe that defendant FRANK SMITH and/or NABIU MANSARAY are contributors to DNA evidence collected from the vehicles. Therefore, there is probable cause to believe that a buccal swab

5

or sample of blood would constitute evidence of FRANK SMITH and/or NABIU MANSARAY's commission of the murders with which they are charged.

12. The government will notify counsel to SMITH and MANSARAY, and coordinate with the Bureau of Prisons, prior to executing the searches.

WHEREFORE, your deponent requests that a search warrant be issued authorizing FBI Special Agents, NYPD officers, United States Marshals and other appropriate law enforcement and support personnel to seize and obtain from FRANK SMITH and NABIU MANSARAY a buccal swab sample or sample of blood. An appropriately trained law enforcement officer, or an appropriately trained designee, will perform the cheek swabbing. The DNA samples sought herein will be collected by buccal swabbing. This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside right cheek and inside left cheek, for approximately five to ten seconds. Two samples are requested from each defendant, in the event that one of the samples becomes contaminated or otherwise cannot be tested. The samples seized will be subsequently submitted to a forensic laboratory for examination and will be subject to examination, testing and analysis. A blood sample will only be sought in the event that FRANK SMITH and/or NABIU MANSARAY refuses to submit to a buccal cheek swab. In

the event that a blood sample is taken, a licensed doctor or nurse or other qualified medical practitioner will take the sample.

MARGARET GIRARD
Special Agent
Federal Bureau of Investigation

Sworn to before me this
6th day of November, 2017

S/ Pollak

THE HONORABLE
UNITED STATES
EASTERN DIST

7